UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BYRON ANDREWS,

          Plaintiff,

v.                                      Case No. 3:23-cv-88-MMH-JBT

SGT. CICARRNO,[1]

          Defendant.

_____

## ORDER

### I.    Status

Plaintiff Byron Andrews, an inmate in the Florida Department of Corrections (FDOC) who is proceeding as a pauper, initiated this case by filing a pro se Civil Rights Complaint (Doc. 1). He is proceeding on an Amended Complaint (Doc. 10; Amended Complaint) against Sergeant Ciccone.[2]

Before the Court is Defendant Ciccone's Motion to Dismiss (Doc. 20; Motion). Ciccone argues that Andrews failed to properly exhaust his

---

[1] The correct spelling of this Defendant's surname is Ciccone. See Doc. 20 at 1 n.1. The **Clerk** shall update the docket accordingly.

[2] On April 24, 2023, the Court dismissed Andrews's claims against Defendants Herring, Inch, and Dixon. See Order (Doc. 11). Thus, Sergeant Ciccone is the only remaining Defendant.

administrative remedies prior to filing this case, Ciccone is entitled to Eleventh Amendment immunity to the extent he is sued in his official capacity for monetary damages, and Andrews is not entitled to declaratory relief. <u>See generally</u> Motion. Andrews filed a "Motion in Opposition to Defendant's Motion to Dismiss" (Doc. 21; Response). Ciccone's Motion is ripe for review.

## II. Andrews's Allegations

In the Amended Complaint, Andrews alleges that on May 16, 2021, Defendant Ciccone housed him "inside of the same cell with a[] hostile inmate who sexually assaulted him" while in possession of a homemade knife. Amended Complaint at 14, 19. Andrews contends that Ciccone, as the dorm supervisor, acted with deliberate indifference as he "was directly responsible for classify[ing] and housing all inmates" in the dorm in which the incident occurred. <u>Id.</u> at 14. According to Andrews, Ciccone knew of the other inmate's close management level 1 (CM1) status "and that he posed a substantial risk of causing serious harm to other inmate[s] based on his violent history towards other inmates." <u>Id.</u> The day after the assault, Andrews contends that Ciccone can "be seen on cam[e]ra placing personal food items inside of cell-4213 to" the inmate who assaulted Andrews. <u>Id.</u> at 19.

### III.   Discussion

#### a. Exhaustion

##### i.  Parties' Positions

Regarding exhaustion, Ciccone contends that "[a]lthough [Andrews] filed informal and formal grievances which were responded to and denied on the merits of his claims, he failed to ever present a proper appeal to the Office of the Secretary." Motion at 20. Ciccone explains that "[e]ach of [Andrews's] grievance appeals were returned without action as he repeatedly failed to comply with filing rules despite given additional opportunities to cure the deficiencies." Id.

Ciccone filed the following exhibits in support of his exhaustion argument: (1) a summary of Andrews's informal grievances submitted between June 7, 2021, and February 8, 2023 (Doc. 20-1); (2) a summary of Andrews's formal grievances submitted between June 24, 2021, and February 21, 2023 (Doc. 20-2); a summary of Andrews's grievance appeals submitted between May 1, 2021, and March 31, 2023 (Doc. 20-3); and copies of Andrews's pertinent grievances and responses thereto (Docs. 20-4 to 20-7). A summary of Andrews's relevant grievances and the responses to each follows.

On June 4, 2021, Andrews submitted an informal grievance complaining about being housed with an inmate on CM1 status. Doc. 20-4 at 2. On June 16,

2021, Andrews's informal grievance was denied with a note explaining that "all inmates are housed according to policy." Id. (capitalization omitted).

Next, Andrews submitted a formal grievance raising the same complaint. Doc. 20-5 at 2. On July 6, 2021, the institution denied his formal grievance, stating that the response Andrews received to his informal grievance appropriately addressed his concerns. Id. at 3.

On July 12, 2021, Andrews authored the following appeal:

> On the day of 6-4-21 I submitted an informal grievance in regards to being housed in the same cell with an inmate (Angel Herrira) who was on C.M.1 status while I was on A/C [(administrative confinement)] overnight. This informal was return[ed] to me. On 6-23-21 I filed a[] formal grievance with the informal attached to it. On 7-8-21 I rec[e]ived a response[] to a formal grievance without any formal or informal grievance attached to it (Log # 2106-251-203). Therefor[e] I'm unable to provide a copy of the formal and because I'm currently in confinement under PREA investigation for a[] sexual assault com[m]itted against me by the very same inmate Angel Herrira I can only provide a reproduce[d] copy of the informal grievance from the original[. O]n 5-16-21 between the hours of 7:00 p.m. – 10:00 p.m. I was  taken to N-Dorm and placed inside of cell 4213 with an inmate (Angel Herrira)[. O]nly after I was release[ed] from confinement did I learn that Herrira had already been approved for C.M.1 and waiting transfer. This is in violation of . . . Ch. 33 rules of co[n]finement for inmates on A/C which I was on at the time[.] I call camera for proof . . . . I also ask that I be transferred to a different institution because I no longer feel safe at Columbia Annex because I believe[] staff was invol[v]ed[.]  I have since file[d] a grievance

> against the grievance coordinator for failing to
> properly process my grievance in accordance with Ch.
> 33 rules governing the grievance procedures.

Doc. 20-6 at 2. On July 29, 2021, an FDOC official returned the grievance

appeal without action with the following response:

> Your request for administrative appeal is in
> non-compliance with the Rules of the Department of
> Corrections, Chapter 33-103, Inmate Grievance
> Procedure. The rule requires that you first submit
> your grievance at the appropriate level at the
> institution. You have not done so or you have not
> provided this office with a copy of that grievance, nor
> have you provided a valid or acceptable reason for not
> following the rules.
>
> Upon review, you are required to provide all
> pertinent documents for a proper review. The
> attached DC6-236 form is not the correct completed
> informal grievance.
>
> Your appeal has been reviewed and evaluated.
> The subject of your grievance was previously referred
> to the PREA coordinator. It is the responsibility of
> that office to determine the amount and type of
> inquiry that will be conducted. This inquiry/review
> may or may not include a personal interview with
> you. Upon completion of this review, information will
> be provided to appropriate administrators for final
> determination and handling.
>
> Upon receipt of this response, if you are within
> the allowable time frames for processing a grievance,
> you may resubmit your grievance at your current
> location in compliance with Chapter 33-103, Inmate
> Grievance Procedure.

> Based on the foregoing information, your grievance is returned without action.

Doc. 20-6 at 3.

On September 29, 2021, Andrews authored another grievance appeal:

> I'm filing a grievance of appeal to the Office[] of the Secretary of D.O.C. against the actions of (F.D.O.C.) Correctional officers for knowingly housing me in the same cell with inmate Angel Herrira who[se] status was CM1 while I was on A/C . . . on the day of 5-16-21 . . . that resulted in him sexually assaulting me[.] I have in the pas[t] appeal[ed] this issue to the Secretary of DOC and was told in the response[] that I did not submit my grievance at appropriate level at the institution although I explain[ed] in the appeal that I was not able to provide a copy of the formal grievance because it was not returne[d] to me – see grievance appeal log # 21-6-20365. I then went on to file a grievance against the asst Warden of Columbia Annex (M. Herring) for failing to properly process my formal grievance and return[] it to me. See grievance appeal log # 21-6-23704 also see formal grievance log # 2108-251-006. Only after the filing of the grievances was the formal grievance returne[d] to me and therefor[e] I'm able to provide a copy of all grievance[s] file[d] on institutional levels and attach them to this appeal . . . . On the day of 5-16-21 while at Columbia Annex, after I was taken to confinement for disorderly conduct, . . . I was placed in cell N-4213 with inmate Herrira who was and had been approved for C.M.1 and threw [sic] his action has threaten[ed] and or abused the rights of other inmates . . . and should have been housed alone. While I was in the cell with Ang[el] Herrira he did sexually assault me[,] a crime which I have reported to correctional officers at Columbia Annex.

Doc. 20-7 at 2. An FDOC official "returned [the appeal] without action," because Andrews addressed "more than one issue and/or complaint." Id. at 3.

In Andrews's Response to Ciccone's Motion, he argues that the responses to his grievance appeals were improper. See Response at 2-3. He contends that in his first grievance appeal, he explained why he could not submit a copy of his formal grievance with the appeal. Id. at 2. Then when he received the copy, he resubmitted a grievance appeal explaining the history of his filings, but his appeal was improperly construed as raising more than one issue. Id. at 3.

### ii.  Prison Litigation Reform Act Requirements

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[3] (noting that exhaustion is "a 'threshold matter' that we address before considering the merits of the case") (citation omitted). It is well settled that the Prison Litigation Reform Act

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

(PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 524 (2002). A prisoner, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[4] 286 F.3d, at 1024 (emphasis in original).

---

[4] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Supreme Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 578 U.S. at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Because failure to exhaust administrative remedies is an affirmative defense, a defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015). At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d

at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). In evaluating whether a plaintiff has satisfied the exhaustion requirement, the Court notes that the Eleventh Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010).

### iii.   Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-

103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." See Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to

exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### iv. Exhaustion Analysis

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Andrews's allegations. See Whatley, 802 F.3d at 1209. In doing so, the Court finds that dismissal is not appropriate at step one. Thus, the Court turns to the second step of Turner.

The only dispute is whether either of Andrews's grievance appeals sufficiently exhausted his administrative remedies. Upon review of the file, the

Court finds that Ciccone's request to dismiss Andrews's claims for failure to exhaust is due to be denied.

In his second grievance appeal,[5] Andrews specifically advised that he was filing the appeal "against the actions of (F.D.O.C.) Correctional officers for knowingly housing [him] in the same cell with inmate Angel Herrira who[se] status was CM1 while [he] was on A/C . . . on the day of 5-16-21 . . . that resulted in [Herrira] sexually assaulting [Andrews]." Doc. 20-7 at 2. Andrews went on to explain why he was resubmitting the appeal, and concluded with his allegations that he was improperly placed in a cell with Herrira who sexually assaulted him. Id. A review of Andrews's grievance appeal reflects that he was complaining about the incident underlying this case. He was not

---

[5] Although Andrews's first grievance appeal was labeled "returned without action," his allegations were "reviewed and evaluated" and "[t]he subject of [his] grievance was previously referred to the PREA coordinator" for an appropriate inquiry. Doc. 20-6 at 3. Andrews was specifically advised that upon completion of the inquiry, "information will be provided to appropriate administrators for final determination and handling." Id. Thus, despite Andrews's first grievance appeal being "returned without action," his allegations were reviewed, evaluated, and addressed. Varner v. Shepard, 11 F.4th 1252, 1260 (11th Cir. 2021) ("Proper exhaustion 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.)'" (quoting Woodford, 548 U.S. at 90) (emphasis added)). And, according to the appeal response, there was no other action that could be taken at that time to resolve Andrews's allegations as they were still under investigation, meaning that further action by Andrews would not produce any additional relief or provide the FDOC with an opportunity to take any further corrective action. Nevertheless, because the response explicitly relied on a procedural defect to "return" the appeal without action, the Court defers to that finding for purposes of the exhaustion analysis.

raising more than one issue or complaint. Instead, he was simply explaining why he had to resubmit the appeal.

The facts here are similar to the facts of <u>Harvard v. Inch</u>, 411 F. Supp. 3d 1220 (N.D. Fla. 2019).[6] In <u>Harvard</u>, the court found that the plaintiff "did everything required by the administrative rules," explaining that the plaintiff "filed a grievance, which was improperly rejected for failing to comply with the one issue rule. He then appealed the rejection to the Office of the Secretary, . . . [which] also improperly rejected this appeal without addressing the underlying claim." <u>Id.</u> The court reasoned that "[b]ecause [the plaintiff] properly followed the administrative rules and [the d]efendants improperly returned his grievance, he has exhausted his [available] administrative remedies." <u>Id.</u>[7]; <u>see also</u> <u>Dimanche</u>, 783 F.3d at 1214 (finding that, contrary to

---

[6] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

[7] In making this finding, the <u>Harvard</u> court cited the following cases: <u>Ross</u>, 578 U.S. at 642 (holding that § 1997e(a) requires an inmate to exhaust only those grievance procedures "that are capable of use to obtain some relief for the action complained of"); <u>Andres v. Marshall</u>, 867 F.3d 1076, 1079 (9th Cir. 2017) (holding that "when prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies" because "[i]n such circumstances, prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable."); <u>Dole v. Chandler</u>, 438 F.3d 804, 811 (7th Cir. 2006) (holding that if inmate properly follows grievance procedure and prison officials mishandle grievance, then inmate must be considered

the FDOC Secretary's assessment, the plaintiff's grievance appeal, which was returned without action, met the requirements of a grievance of reprisal and was sufficient to satisfy the plaintiff's exhaustion obligations). Like the plaintiff in <u>Harvard</u>, Andrews complied with the grievance process and his appeal was improperly "returned without action," which effectively rendered the process unavailable to him. Thus, based on the specific facts of this case, at step two of the <u>Turner</u> analysis, the Court finds that Andrews properly exhausted his available administrative remedies. Therefore, Ciccone's Motion is due to be denied to the extent it seeks dismissal based on exhaustion.

### b. Eleventh Amendment Immunity

Ciccone argues that he is entitled to Eleventh Amendment immunity to the extent he is being sued in his official capacity. Motion at 12-13. Andrews agrees to dismiss his claims against Ciccone in his official capacity. Response at 4. Accordingly, Ciccone's Motion is due to be granted to the extent it seeks dismissal of all claims against Ciccone in his official capacity.

---

to have exhausted administrative remedies); <u>Burnett v. Jones</u>, 437 F. App'x 736, 741 (10th Cir. 2011) ("[I]mproper rejection of grievance appeal excuses the prisoner's failure to properly exhaust."); <u>Johnson v. Meier</u>, 842 F. Supp. 2d 1116, 1119 (E.D. Wis. 2012) (finding that defendants wrongly concluded that the plaintiff violated the single-issue rule and because the plaintiff complied with the grievance rule, he "was left with no further remedies under the inmate grievance system and met the requirements of the PLRA").

### c. Declaratory Relief

Ciccone asserts that Andrews is not entitled to declaratory relief "based on past conduct." Motion at 13. Andrews responds by asserting that he seeks relief against "Ciccone for his action on the date of 5-16-21 in which he intentionally placed [Andrews] inside a cell with an inmate who was to be housed alone with the intent of inflicting bodily harm to [Andrews]." Response at 4.

The cases Ciccone cites in the Motion address requests for declaratory relief against defendants in their official capacities. See Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1336-41 (11th Cir. 1999) (addressing the Ex Parte Young, 209 U.S. 123 (1908), doctrine in the context of Eleventh Amendment immunity for state officials); Jones v. Buckner, 963 F. Supp. 2d 1267, 1284 (N.D. Ala. 2013) ("The issuance of a declaratory judgment against the Defendants in their official capacity declaring that, by their past actions, they have exceeded their authority and violated federal law would serve no purpose other than to validate or authorize an award of monetary damages."). Because Andrews agrees to dismiss his claims against Ciccone in his official capacity, Ciccone's Motion will be granted to the extent it seeks dismissal of Andrews's request for declaratory relief against Ciccone in his official capacity.

Accordingly, it is

17

**ORDERED**:

1.      Defendant Ciccone's Motion to Dismiss (Doc. 20) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED to the extent** it seeks dismissal of all claims and relief requested against Defendant Ciccone in his official capacity. The Motion is **DENIED to the extent** it seeks dismissal for failure to exhaust.

2.      Defendant Ciccone shall file an answer by **January 25, 2024**.

3.      A separate order will enter setting case management deadlines.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of January, 2024.


MARCIA MORALES HOWARD
United States District Judge


JAX-3 1/2
c:
Byron Andrews, #B06604
Counsel of Record