UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| BYRON ANDREWS,<br><br>    Plaintiff,<br><br>vs.<br><br>SGT. CICCONE, *et al.*<br><br>    Defendants. | Case No. 3:23-cv-88-MMH-SJH |

### DECLARATION OF BYRON ANDREWS

I, Byron Andrews, pursuant to 28 U.S.C. § 1746, state as follows:

1. On March 18, 2021, I wrote a grievance on corrections officers for gassing and physically abusing an inmate who was having a seizure. I also placed an anonymous call to the Tips Hotline. Thereafter, I received threats for filing grievances. Dorm Sgt. J.L. Tucker announced that inmates who filed grievances would be "dealt with." I continued to file grievances relating to the abuse although they were not returned.

2. On May 16, 2021, after filing the last grievance, I was told there were orders not to feed me. I was told to "cuff up" and I was taken to Dorm Sgt. Tucker. He had written me a disciplinary report for Disorderly Conduct for knocking on the glass at the Officer's Station. I was escorted to confinement by Tucker while count was still going on – which was rare, especially for a minor violation.

3. Once I was in confinement, Sgt. Ciccone took me to Cell N4213, the cell of Inmate Angel Herrera. As Ciccone was about to place me in the cell, Herrera said something about being on "house alone" status. With that warning, there should

have been an inquiry before I was placed there. Ciccone replied, "I don't care."

4. Inmate Herrera seemed somewhat hostile to me. He asked me several questions while ignoring my questions. He wanted to know why Tucker had problems with me. He wanted to know what I had done to be placed in confinement. He asked if I was gay. I told him that I was not. I knew Herrera by reputation – that he was homosexual and took contracts to "hit" (usually stab) other inmates. I didn't think I would have a problem with him and I didn't object to the placement.

5. Sometime during the night, Herrera woke me up. He was standing next to me with a homemade knife. He told me to lie back down on my stomach. He put a pillow over my head. He penetrated me anally. Later, he told me I was lucky that was all he did. He said, "I was supposed to "hit" you," (which prison language for a stabbing), but he decided to rape me instead. I later saw him stab someone.

6. I concluded that I was set up for a hit by Officer Tucker who passed me to Ciccone who placed me with Inmate Herrera because I filed a grievance on Ofcr. J. Manley for beating and gassing an inmate who was having a seizure. It was pretty bad. I received threats from Sgt. Tucker who passed me on to Ciccone.

7. The next morning, May 17, 2021, after breakfast, I saw Sgt. Ciccone passing personal (non-official) food items to Inmate Herrera. Herrera later told me that was a reward for assaulting me. I heard Sgt. Ciccone ask Herrera, "Did you hit (stab) him?" Ciccone added, "Is he hurt?"

8. Later that morning, between 10:00 a.m. and 12:00 p.m., Officer Willis took me to a different quad. I told Willis that Herrera had raped me. Willis told me, "If I

was you, I wouldn't say nothing about it." It appeared that he knew what was going on and my placement with Herrera served its purpose. I was placed in another unit. The cell I was placed in had an inmate, I think his name was Reid, was bleeding. I understood had been beaten up by officers. Captain Cooper was present.

9. I reported the sexual assault to Capt. Cooper. He said that if I say anything about it, the same thing will happen to me, indicating my cellmate who was covered in blood. I reported it to Ofcr. Willis and a counselor named Stirley and a lot of others. I tried to call the TIP Hotline but it wasn't working. There was never a PREA examination or PREA investigation. Instead, I was charged with "refusing" to cooperate with an investigation, which is false.

10. In placing me with Herrera, Defendant violated 33-601.800, Florida Administrative Code, which includes the provisions that an inmate who caused injury or could have caused injury to another, or who participated in a sexual assault or battery, should be housed alone. 33-601.800(2)(a)b-m, Florida Administrative Code (eff. 1/18/21). However, in addition, Inmate Herrera showed a visible disposition to harm me if we were housed together.

11. The fact that Ciccone provided my cell mate with special food items further suggests my cell mate was being rewarded for abusing me. I am not aware whether video recordings were retained or reviewed. Herrera had an edged weapon in his possession, which was the same offense he was placed on CM 1 for.

12. Afterwards, Herrera acknowledged to me that the food items were partial payment for carrying out an assault on me and that he had been instructed to stab

3

me, but that Herrera chose to sexually assault me instead.

13. Defendant may claim that the food items were simply ordered canteen items but if that were true, there would be a canteen order form. The canteen order forms are signed again after distribution of the canteen items by the canteen operator. The date the items were provided was not a canteen day. Finally, the items were not items that prisoners were allowed to purchase.

14. Sgt. Ciccone was aware of the implications of the warning Herrera gave him, responding, "I don't care." Sgt Ciccone also showed an awareness of the risk of harm from Herrera when he asked "Did you hit him?" and his approval of the assault by rewarding Herrera with food items he would not have been entitled to.

15. Chapter 33 does not permit inmates on Administrative Confinement (AC), such as Plaintiff, to be confined with an inmate on CMI status. Defendant would not have been able to place Plaintiff with Herrera consistent with his guiding policies and training, given the incompatibility, unless he was deliberately violating the rules in a way that created a risk of harm for Plaintiff.

16. As the Dormitory Supervisor and senior ranking officer assigned to N Dormitory confinement, Defendant would have known, even if Herrera had not told him, that Herrera was CM-I and could not be placed with me. Herrera had originally been confined on AC confinement on March 23, 2021, but was placed on Close Management on March 31, 2021. I was placed on Administrative Confinement (AC) on May 16, 2021, 45 days after Herrera had been placed on CMI status.

FURTHER, AFFIANT SAITH NOT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___1-3-24___ at ___Bowling Green___, Florida.

_____  1-3-24
SIGNED                     DATE

___Byron Andrews___
PRINT NAME