UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BYRON ANDREWS,
DC# B06604,
    Plaintiff,

v.                           CASE NO.: 3:23-cv-88-MMH-SJH

SGT. CICCONE,
    Defendant.
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MSJ**

Pursuant to Rulel 56, Fed. R. Civ. P., submits this Reply in support of his Motion for Summary Judgment ("MSJ"). (Doc. 45). In support, Defendant states:

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant restates and re-alleges the summary of Plaintiff's allegations and statement of undisputed material facts in Defendant's Motion for Summary Judgment. (Doc. 45). Afternoon count at Columbia Correctional Institution – Annex was completed at 5:55 p.m. *See* Defendant's Exhibit A at 4. Plaintiff was observed acting disorderly at approximately 6:10 p.m., and thus, Plaintiff was moved to confinement well after count was completed. *See* Doc. 45-1. Plaintiff was seen by medical staff at 6:30 p.m. when a Chest Pain Protocol was completed, along with a Pre-Special Housing Health Evaluation. *See* Defendant's Exhibit B. In the Objective section of Chest Paint Protocol, the nurse notated that Plaintiff's behavior was "Angry." *Id.* at 1. Plaintiff's DC6-299 reflects that Plaintiff was seen

1

by medical at approximately 6:30 p.m. *See* Defendant's Exhibit C. Defendant clocked in at 6:56 p.m. *See* Defendant's Exhibit D.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "An issue of fact is 'material' if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

**I.     Plaintiff cannot raise a claim for retaliation for the first time in his Response.**

As an initial matter, to the extent that Plaintiff now attempts to raise a retaliation claim, such was not raised in his Amended Complaint (Doc. 10) and cannot be raised for the first time in response to Defendant's Motion. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004) (holding that a non-moving party plaintiff may not raise a new legal claim for the first time in response to a motion for summary judgment). Plaintiff alleges that he was placed in the same

2

cell as Angel Herrera ("Herrera") as retaliation for filing grievances against correctional officers. *See generally* Doc. 73. However, Plaintiff did not raise this claim in his Amended Complaint[1]. *See* Doc. 10.

## II. Plaintiff cannot demonstrate a claim for deliberate indifference.

Plaintiff has not raised a genuine dispute of material facts related to his deliberate indifference claim and has not provided sufficient evidence to support a finding in his favor. Plaintiff asserts that inmate Angel Herrera posed an objectively serious risk of harm. To demonstrate an objective serious risk of harm, Plaintiff must show "conditions that are so extreme and posed an unreasonable risk of serious injury to his future health or safety." *Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016)*. An objectively substantial risk of serious harm may occur in one of two ways: (1) an individualized risk personal to the plaintiff based on specific threats or (2) an environmental risk based on generally dangerous prison conditions. *Bugge v. Roberts*, 430 Fed. Appx. 753, 758 (11th Cir. 2011). Here, Plaintiff fails to demonstrate a substantial risk in either of the two ways.

In attempting to demonstrate a substantial risk of serious harm, Plaintiff relies on: (1) Herrera's alleged reputation for being violent and carrying out "hits", and (2) Herrera's CMI status. Plaintiff's alleged facts do not demonstrate an objectively serious risk of harm.

---

[1] Defendant did not interpret any of Plaintiff's claim in his Amended Complaint as a retaliation claim. If this Court disagrees with Defendant's interpretation of Plaintiffs' claims in his Amended Complaint, Defendant respectfully requests that he be allowed to respond to the claim.

First, Plaintiff alleges that Herrera had a violent reputation and was known for "carrying out contracts - 'hits'- on other inmates," and thus, a substantial risk existed when Defendant placed Plaintiff in the same cell as Herrera. *See* Doc. 73 at 2. During his deposition, Plaintiff stated, "I knew of him ... I knew he had a reputation of taking contracts out on other inmates or taking what we call hits... I actually seen him stab an inmate at Columbia Annex before." *See* Defendant's Exhibit E at 14-15; ¶¶20-1. Plaintiff knew of Herrera's alleged reputation before being placed in the same cell with him, yet Plaintiff did not object to being placed in the cell with him. Plaintiff was asked if he told the Defendant he did not want to be housed with Angel Herrera, and Plaintiff answered, "No, I didn't - I didn't object to it. **I had no reason to**." *Id.* at 17; ¶¶3-7. (emphasis added).

Plaintiff also relies on Herrera's CMI status to demonstrate an objective risk of harm, because as a CMI status inmate Herrera could not be housed with other inmates and represented a serious threat of harm to Plaintiff. Proof of an attacker's "generally problematic nature" or "propensity to misbehave" will not suffice to prove that he posed a substantial risk of serious harm to the detainee. *See Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1322 (11th Cir. 2016) (citation and internal quotation marks omitted). The evidence must establish a greater "degree of specificity in the risk of harm posed to [the victim.]" *Id.*

Even if Plaintiff could show that he faced an objective substantial risk of harm by being housed with Herrera, Plaintiff still cannot demonstrate that Defendant was deliberately indifferent to any potential risk of harm. Plaintiff

4

cannot show that Defendant had subjective knowledge that Plaintiff faced a substantial risk of sexual assault. Plaintiff has no evidence that Defendant approved his placement in the cell with Herrera knowing that Herrera was CMI status. Plaintiff instead speculates that he was placed in the cell with Herrera because he filed a grievance against Officer J. Manley, an officer who rarely worked in the same building as the Defendant, on March 18, 2021. *See generally* Doc. 73; Doc. 72 at 196, ¶6; Defendant's Exhibit E. Plaintiff claims that because of this grievance he was given a false ("DR") so he could be handed over to Defendant in the confinement dormitory and placed in the same cell as Herrera, a CMI status inmate. *See* Doc. 72 at 196, ¶6. Notably, the DR was given at approximately 6:10 p.m., which was before Defendant had clocked in to work. *See* Doc. 45-1; Defendant's Exhibit D. Plaintiff further claims that Herrera was bribed with food items not sold in canteen to stab him. However, a Housing Sergeant like Defendant was not responsible for issuing housing assignments. *See* Doc 45-2. The institution's control room performed the screening of the gained inmate and notified the dormitory's staff that the inmate could be placed in a particular cell. *Id*. Plaintiff admits that Defendant told him that Plaintiff needed to be screened before being placed in a cell. *See* Defendant's Exhibit E at 12, ¶¶1-16. Therefore, there is no genuine dispute on whether Defendant followed policy and procedure and had the control room screen Plaintiff to house him in a cell.

Additionally, during Plaintiff's deposition, when asked if Herrera told Plaintiff that he was intentionally placed in his cell for the purpose of stabbing,

5

Plaintiff just said, "he **indicated** that when he said that I'm lucky that's all he – that he did because he was supposed to stab me." Defendant's Exhibit E at 21, ¶¶13-18. (emphasis added). Plaintiff added, "the reason why **I believe so** is for the past grievances that filed against corrections officers...." Id. at 21, ¶¶20-23. (emphasis added). Plaintiff has not provided any evidence that the Defendant, or any other officer, was aware that he had filed a grievance against J. Manley. More importantly, Plaintiff has not provided any evidence that the Defendant was aware of specific facts that would provide him with the subjective knowledge of the risk of serious harm to Plaintiff by placing him in a cell with Herrera. *See Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (upholding summary judgment for prison officials when the plaintiff failed to provide evidence of any particularized threat).

As to his claim that Defendant awarded Herrera with food items not sold by canteen, specifically a honey bun, Plaintiff's claim is meritless. Herrera's Inmate Order History Report demonstrates that Herrera had previously purchased several items from the canteen, including an Iced Honey Bun. *See* Defendant's Exhibit G. Additionally, Herrera placed a non-canteen order on May 9, 2021, that was processed on May 17, 2021. *Id.* at 1-2

Plaintiff also argues that as the Dormitory Supervisor[2], Defendant would have known that Herrera was CMI. However, in institutions that are not designated as CM institutions, such as Columbia-Annex, confinement staff manage

---

[2] Defendant title was not Dormitory Supervisor; he was a Dormitory Sergeant.

6

the security of CM inmates like other confinement inmates. *See* Defendant's Exhibit F. Prior to an update to the IBAS, confinement staff may not have been aware that a specific inmate had been approved for CM, unless alerted by a manual alert such as a notation in the inmate's DC6-229's or a placard placed on the cell door designating the inmate as CM. *Id.* Herrera noted that the cell doors at Columbia -Annex did not put a sign on the cell door indicating the inmate's status. *See* Doc. 72 at 33. Additionally, Herrera's DC6-2209 did not have a notation signifying that he had been approved for CM1. *See* Doc. 45-4. Therefore, Plaintiff's assertions are refuted by the record.

                                           JAMES UTHMEIER
                                           ATTORNEY GENERAL
                                           */s/ Juanita Villalpando*
                                           Juanita Villalpando (FBN 1036083)
                                           Assistant Attorney General
                                           Office of the Attorney General
                                           Civil Litigation Division
                                           The Capitol, PL-01
                                           Tallahassee, Florida 32399
                                           (850) 414-3300
                                           Juanita.Villalpando@myfloridalegal.com

CERTIFICATE OF SERVICE

    I hereby certify a copy of the foregoing *Defendant's Reply in Support of Motion for Summary Judgment* was e-filed electronically through CM/ECF and served on all registered counsel on May 12, 2025.

                                           */s/ Juanita Villalpando*
                                           Juanita Villalpando