UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**BYRON ANDREWS,**
    **Plaintiff,**

v.                                       CASE NO.: 3:23-cv-88-MMH-SJH

**SGT. CICCONE,**
    **Defendant.**
_____/

### AMENDED REPLY AND OBJECTIONS TO PLAINTIFF'S RESPONSE

Ciccone ("Defendant") submits this Reply to Plaintiff's Response (Doc. 73) pursuant to M.D. Fla. Loc. R. 3.01(d). In support, Defendant states:

### MEMORANDUM OF LAW

I.    Objections to Evidence Presented by Plaintiff

First, Defendant objects to Ciccone's Dismissal Letter (Doc. 72-8) pursuant to Rules 403 and 404(b), Fed. R. Evid. The incident that resulted in Defendant's dismissal occurred *after* the alleged incident in this case and is not related to Plaintiff's claims, so Rule 404(b)(2), Fed. R. Evid., does not apply. Furthermore, the evidence would be unfairly prejudicial to the Defendant and is likely to lead to confusion of the issues at hand versus the actual basis for Defendant's termination.

Second, Defendant objects to the Declaration of Byron Andrews (Doc. 72-3) due to Plaintiff asserting facts which were not addressed during and are contradictory to his deposition. In his declaration, Plaintiff asserts the following for the first time: that Angel Herrera ("Herrera") asked him "why Tucker had problems with [Plaintiff]"

1

(Doc. 72 at 196, ¶4), that Herrera told Plaintiff that the food items were a "reward" for assaulting Plaintiff (*Id.* at ¶7), and that Plaintiff now alleges that Defendant spoke with Herrera after the alleged attack. *See* Doc. 10; Def. Ex. A.

Plaintiff was asked about what Herrera said to him after the alleged sexual assault and Plaintiff answered, "[A]ll he told me was I'm lucky … that's all he did, and that he was supposed to hit me and *that's it*." *See* Def. Ex. A at 26, ¶¶16-22. (emphasis added). As for the interaction between Defendant and Herrera on May 17, 2021, Plaintiff stated: "Ciccone comes back to the cell after breakfast is served and he places some personal food items of his and he gives it to Angel Herrera and kind of nods at him and winks … I can only assume and conclude that that was paid off for the assault." *Id.* at 24-25, ¶¶21-24, ¶¶5-6. When asked to further clarify how the Defendant allegedly dropped off the items, Plaintiff only answered, "so he reopened the flap and placed those items inside the cell." *Id.* at 26, ¶¶1-7. Plaintiff never alleged that Defendant spoke to Herrera when he allegedly dropped off the food items, let alone about the supposed hit. *Id.* Further, Defendant objects to Plaintiff's statement that Herrera told him that he had been instructed to assault Plaintiff as hearsay. *See* Doc. 72-3 at ¶12. Plaintiff is utilizing Herrera's statements to prove that Plaintiff's assault was planned.

II.     Plaintiff cannot raise a claim for retaliation for the first time in his Response.

To the extent that Plaintiff now attempts to raise a retaliation claim, such was not raised in his Amended Complaint (Doc. 10) and cannot be raised for the first time in response to Defendant's Motion. *See Gilmour v. Gates, McDonald & Co.*,

2

382 F.3d 1312 (11th Cir. 2004). Plaintiff alleges that he was given a false disciplinary report ("DR") by Sgt. Tucker and placed in the same cell as Herrera as retaliation for filing a grievance against Off. J. Manley. *See* Def. Ex. A at 21, 34; Response at 2. However, Plaintiff did not raise this claim in his Amended Complaint.

Furthermore, by asserting he was subjected to a fabricated and retaliatory DR, Plaintiff is raising claims directly contrary to the facts upon which the DR charge was based. *See* Doc. 73 at 2, 6. The record demonstrates Plaintiff was found guilty of the infraction as charged in the DR and lost gain time. *See* Doc. 45-1. Therefore, any claims implying the invalidity of the DR are barred under *Heck v. Humphrey* 512 US 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641 (1997). "A state prisoner's § 1983 action is barred … *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S. Ct. 1242 (2005) (emphasis retained). Where an inmate has lost gain time due to a DR, he may not pursue a civil rights action under 42 U.S.C. § 1983 if success in that civil rights action would necessarily imply the invalidity of the DR. The "relevant inquiry is … whether the § 1983 claims call into question the validity of the deprivation of those credits." *Richards v. Dickens*, 411 F. App'x 276, 279 (11th Cir. 2011) (unreported op.). Here, by Plaintiff challenging the motivation that contributed to his current claim, he is undermining the facts of the DR.

III.   <u>Plaintiff's evidence does not support a deliberate indifference claim.</u>

Plaintiff fails to demonstrate that Herrera posed an objective serious risk of harm. To demonstrate an objective serious risk of harm, Plaintiff must show

3

"conditions that are so extreme and posed an unreasonable risk of serious injury to his future health or safety." *Lane v. Philbin,* 835 F.3d 1302, 1307 (11th Cir. 2016). An objectively substantial risk of serious harm requires: (1) an individualized risk personal to the plaintiff based on specific threats or (2) an environmental risk based on generally dangerous prison conditions. *Bugge v. Roberts*, 430 Fed. Appx. 753, 758 (11th Cir. 2011). However, the evidence does not support that Herrera posed a substantial serious risk of harm to Plaintiff.

Plaintiff alleges that Herrera had a violent reputation and was known for executing "hits" on other inmates. *See* Doc. 73 at 2. During his deposition, Plaintiff stated, "I knew of him … I actually seen him stab an inmate at Columbia Annex before." *See* Def. Ex. A at 14-15; ¶¶20-1. Plaintiff knew of Herrera's alleged reputation before May 16, 2021, yet Plaintiff did not object to being placed in the cell with him. Plaintiff stated he did not object to being housed with Herrera, "No, I didn't - I didn't object to it. **I had no reason to**." *Id.* at 17; ¶¶3-7. (emphasis added). Further, Plaintiff has only provided his own statements as evidence to support Herrara's alleged reputation. Herrera's DR history, from 11/5/2012 to 3/15/2021, shows that Plaintiff had only received 3 DRs for altercations with other inmates in 10 years. *See* Doc. 72-7 at 17.

Plaintiff also argues Herrera's CMI status alone demonstrates an objective risk of harm, because as a CMI status inmate, Herrera could not be housed with other inmates. However, proof of an attacker's "generally problematic nature" or "propensity to misbehave" will not suffice to prove that he posed a substantial risk of

4

serious harm to the detainee. *See Bowen v. Warden, Baldwin State Prison*, 826 F.3d 1312, 1322 (11th Cir. 2016) (citation and internal quotation marks omitted). The evidence must establish a greater "degree of specificity in the risk of harm posed to [the victim.]" *Id.* Moreover, the Herrera's Behavioral Risk Assessment provided by Plaintiff was completed Union C.I. after the alleged incident involving Plaintiff. *See* Doc. 72-5 at 1.

Further, Plaintiff has not demonstrated that Defendant was aware of a "particularized threat" that would "enable [him] to conclude that" Plaintiff faced a "strong likelihood" of injury rather than a "mere possibility," of injury. *Carter v. Galloway,* 352 F.3d 1346, 1350 (11th Cir. 2003); *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019). *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). Plaintiff asserts that Defendant knew that Herrera was CMI status because Herrera allegedly told Defendant when Defendant placed Plaintiff in the cell. But such statements are not inherently credible because even, Plaintiff acknowledges that inmates will "often" try to dissuade officers from giving them cellmates. *See* Def. Ex. A at 15, ¶¶13-15. Additionally, Herrera's purported statement did not provide Defendant with any additional information about what Herrera allegedly planned to do to Plaintiff. *See Carter*, 352 F.3d at 1349 (quoting *Farmer*, 511 U.S. at 837) ("Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also 'draw that inference.'").

Plaintiff argues that as the Dorm Supervisor, Defendant would have known Herrera's status. However, at institutions that are not designated as CM institutions,

e.g. Columbia-Annex, confinement staff manage the security of CM inmates like other confinement inmates. *See* Def. Ex. B at ¶8. Prior to an update to the IBAS, confinement staff may not have been aware that a specific inmate had been approved for CM, unless alerted by a manual alert such as a notation in the inmate's DC6-229's or a placard placed on the cell door designating the inmate as CM. *Id.* at 9. Herrera noted that the cell doors at Columbia-Annex did not put a sign on the cell door indicating the inmate's status. *See* Doc. 72 at 33. Further, Herrera's DC6-229 did not have a notation signifying that he had been approved for CMI. *See* Doc. 45-4. Plaintiff has not provided any evidence that Defendant had actual knowledge of Herrera's CMI status.

Plaintiff asserts he is able to produce evidence from which a jury would find that Plaintiff was given a DR on May 16, 2021, in retaliation for filing a grievance against Manely on March 18, 2021, that Defendant knew of Herrera CM status, and that Defendant either instructed/approved the assault against Plaintiff because Defendant gave Herrera an item that was not sold by canteen. However, contrary to Plaintiff's assertions, the record demonstrates: At 6:10 p.m., Plaintiff was given a DR for disorderly conduct after count had been completed. *See* Doc. 45-1; Def. Ex. C. Plaintiff was seen by medical staff at 6:30 p.m. when a Chest Pain Protocol and Pre-Special Housing Health Evaluation were completed. *See* Def. Ex. D. In the Objective section of Chest Paint Protocol, the nurse noted that Plaintiff's behavior was "Angry." *Id.* Defendant clocked in at 6:56 p.m. Def. Ex. E. Subsequently, Defendant approached Plaintiff in the holding cell, asked Plaintiff questions and told Plaintiff he would be screened to be housed with a compatible inmate. *See* Def. Ex. A. The institution's

control room performed the screening and notified the dormitory's staff that the inmate could be placed in a particular cell. *See* Doc. 45-2. Plaintiff was then placed in cell 4213. *See* Def. Ex. G. Herrera's DC6-229 reflected that he was Administrative Confinement ("AC") status. *See* Doc. 45-4. Herrera's Inmate Order History Report shows that Herrera had previously purchased several items from the canteen, including an Iced Honey Bun. *See* Def. Ex. F. Additionally, Herrera placed a non-canteen order on May 9, 2021, that was processed on May 17, 2021. *Id.* at 1-2.

To the extent that Plaintiff claims he was given a false DR so he could be placed in the same cell as Herrera, this is speculative and neither the record nor evidence supports this. *See* Doc. 72-1 at 96, ¶6.

## CONCLUSION

WHEREFORE, this Court should grant Defendant summary judgement.

Respectfully submitted,<br>
JAMES UTHMEIER<br>
ATTORNEY GENERAL<br>
<i>/s/ Juanita Villalpando</i><br>
Juanita Villalpando (FBN 1036083)<br>
Assistant Attorney General<br>
Office of the Attorney General<br>
The Capitol, PL-01<br>
Tallahassee, Florida 32399<br>
(850) 414-3300<br>
Juanita.Villalpando@myfloridalegal.com

## CERTIFICATE OF SERVICE

I hereby certify a copy of the foregoing was e-filed electronically through CM/ECF and served on all registered counsel on June 6, 2025.

<i>/s/ Juanita Villalpando</i><br>
Juanita Villalpando

7