IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BYRON ANDREWS,

    Plaintiff,

v.                                      Case No.: 3:23-cv-88-MMH-SJH

SGT. CICCONE,

    Defendant.
_____/

## DECLARATION OF CARL WESLEY KIRKLAND, JR.

    I, Carl Wesley Kirkland, Jr., pursuant to 28 U.S.C. §1746 and § 92.525, Fla. Stat., make this declaration under penalty of perjury and declare that the statements made below are true and state:

1. I am employed as a Deputy Director of Institutional Operations by the Florida Department of Corrections ("FDC"), Office of Institutions in Tallahassee, Florida. I have held this Position since January 2017. Prior to my recent promotion, I was the Bureau Chief of Security Operations. I held that position since April 2013. I have been employed with the FDC since 1990, beginning as a correctional officer and was promoted up through colonel before taking the position at central office.

2. In my current position, I oversee the Bureau of Security Operations, which is responsible for coordinating the security operations for statewide coordination, reviewing and developing security procedures within the FDC, security audits, and operational reviews. I am also responsible for the program areas of Officer Communications and Emergency Action Center, American Correctional Association (ACA) compliance, and Prison Rape Elimination Act (PREA) compliance.

3. Housing assignments are completed by the Security Department in accordance with the Inmate Behavioral Assessment Scale ("IBAS"), to ensure compatibility.

4. Today, IBAS has a restriction that prevents inmates that have a team decision approving close management I ("CMI") status from being housed

1

with other inmates. The system will automatically block the placement of another inmate in the cell that houses a CMI status inmate and force the person making the data entry to find another cell.

5. In May 2021, IBAS did not have the automatic block in place that would have prevented a non-CM inmate from being housed in the same cell with a CM inmate.

6. Columbia Correctional Institution – Annex is not designated as a CM institution, which means that it does not house CM inmates long-term. Beds in non-CM institutions are designated as administrative confinement bed and not CM beds.

7. Inmates that are approved for CM in non-CM institutions are housed in administrative confinement while a CM bed becomes available in an institution that houses CM inmates, and he can be transferred. While the CM status inmate waits to be transferred, he will continue to be housed in administrative confinement, but he will be receiving credit for being on CM.

8. In a non-CM institution, confinement staff manage the security of CM inmates like other confinement inmates. CM status inmates are not engaging in CM activities and programs while assigned to an administrative confinement bed in an institution that is not designated as a CM institution. The team decision approving CM status only triggers special reviews that are required for CM inmates.

9. Before the update to the system, dormitory staff in the confinement unit may not have been aware that an inmate was approved for CMI. Dormitory staff were alerted of an inmate's CM status by notations in the inmate's DC6-229 and/or a placard on the cell door stating that there was a team decision approving CM status.

10. The foregoing facts are personally known by me to be true and correct. I am over the age of 18 and am competent to testify to such facts and would so testify if I appeared in court as a witness at a trial regarding this matter. I declare under penalty of perjury that I have read the foregoing declaration and I confirm that the facts stated in it are true.

_____
**CARL WESLEY KIRKLAND, JR.**
**Declarant**

5/12/2025
**Date**