UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BYRON ANDREWS,

    Plaintiff,

vs.

SGT. CICCONE, et al.,

    Defendants.

Case No. 3:23-cv-88/MMH/SJH

**PLAINTIFF'S SUR-REPLY**

Plaintiff Byron Andrews offers this Sur-Reply to Defendant's Reply (Doc. 83) to Plaintiff's Response (Doc. 73) to Defendant's Motion for Summary Judgment (Doc. 45), and would show:

**PROCEDURAL HISTORY**

1. On August 27, 2024, Defendant filed his Motion for Summary Judgment. (Doc. 45). On April 28, 2025, after an extension to procure additional discovery, Plaintiff filed his Response. (Doc. 73).

2. On May 23, 2025, Defendant filed his initial Reply (Doc. 76) as well as Objections to Plaintiff's Evidence (Doc 77). On May 19, 2025, Plaintiff filed his Motion for Leave to Surreply (Doc. 79), amending the Motion (Doc. 81), and to Strike Objection to Plaintiff's Evidence (Doc. 80).

3. On May 21, 2025, this Court issued an Order striking Defendant's Reply (Doc. 76), Notice of Filing (Doc. 78), and Objections (Doc. 77), and allowed Defendant to file an amended reply. (Doc. 82).

4.  On June 6, 2025, Defendant filed his new Reply. (Doc. 83). Plaintiff contends that several issues remain for discussion appropriate for Sur-Reply.

## ISSUES FOR SUR-REPLY

1.  Defendant argues that Plaintiff has not proved he knew Herrera was on CM-I (Doc. 83 at 6) i.e., "house alone" status (Doc. 72-4). Plaintiff seeks to show that competent evidence of Defendant's acts and words show at least deliberate indifference and allow a reasonable jury to draw an inference of actual knowledge.

2.  Defendant's Exhibit B (Doc. 82-3), the Kirkland Declaration, is new evidence, executed on the date of the Amended Reply (Doc. 83). It provides for the first time technical details relating to the Department of Corrections' system for avoiding incompatibility not previously provided. Plaintiff would seek to show how the new information is at odds with earlier declarations.

3.  Defendant invites the Court to weigh Herrera's few reports (DRs) for violence as against Plaintiff's claim of objective risk. (Doc. 83 at 4). Plaintiff seeks to show that record evidence, including Herrera's own words, shows otherwise.[1]

### 1. Argument on Documentation of Herrera's CM Status

Defendant argues that he was dependent on others for information regarding Inmate Herrera's classification status. There is a vague suggestion that someone else was responsible for the Daily Record of Special Housing form, DC6-229, that showed Herrera on Administrative Confinement (AC) status. (Doc. 45 at 11). In his

---

[1] Plaintiff submits that his Response adequately argues that Herrera's CM-I status alone should have precluded housing Plaintiff with him.

Reply, Defendant explicitly argues there was no proof that he had actual knowledge of Herrera's CM-I status if the DC6-229 "did not have a notation signifying that he had been approved for CM-I." (Doc. 83 at 6), thus leaving the impression that he was not the person who maintained the DC6-229 form.

In fact, it was Defendant himself who was responsible for maintaining the DC6-229 with the correct status information directly from the computer. In deposition, this exchange was had:

> Q.· ·And so, if you looked at the 229 and the status was incorrect, you would change it, correct?
>
> A.· ·Yes, that would be the right course of action.
>
> Q.· ·All right.· Are you pretty confident that whatever that 229 said was correct?
>
> A.· ·I wouldn't know.
>
> Q.· ·Okay.· Well, then hypothetically, if you were checking the status of the inmate every week and you had an inmate who was -- had been CM for six weeks, would you have more or less automatically updated his status to CM?
>
> A.· ·Based on procedure, that would be the right thing to do, but I don't recall if that is what happened.

(Doc. 72-2 at 29:9-22). This clarification of Defendant's role in the maintenance of records is critical in that it helps clear up confusion on the flow of information to which Defendant had access and clarifies his assigned role in the housing process.

### 2.  Argument on the Capacity for Error in Inmate Housing

The Florida Department of Corrections (FDC) has a system called the Inmate Behavioral Assessment Scale (IBAS). In his Motion for Summary Judgment, Defendant presents affidavits to argue FDC has a fail-safe system to automatically

preclude housing incompatible inmates together. Plaintiff would seek to present the contradictions inherent in Defendant's IBAS arguments.

In his Reply, Defendant presents a Declaration by Deputy Director of Institutional Operations, Carl Wesley Kirkland, that contradicts the earlier affidavit on how the system works, showing that housing decisions allow human discretion. Kirkland states under oath that although there is now a system to take human discretion out of the placement of CM inmates with other security level inmates, that system to automatically block CM inmates from being placed with non-CM inmates was not working in May of 2021, leaving human discretion on placement. This shows that individuals, including Defendant, could manipulate the housing decisions instead of blindly following the dictates of an automatic process.

### 3. Argument on the Objective Risk of Harm Presented by Herrera

Plaintiff argued there was an objective risk of harm to Plaintiff from Inmate Herrera against which Defendant argues for the first time in his Reply the fairly innocuous nature of Herrera's disciplinary record. (Doc. 83 at 4).

However, the investigation on Herrera's referral for Close Management I shows that on March 24, 2021, Herrera wrote a witness statement to the effect that "I would like to go to CM please. I don't want to kill know (sic) body." ECF 72-7 at 7. On March 30, 2021, Herrera was recommended for CM-I. 72-7 at 11, which was imposed on April 1, 2021. (Doc. 72-5 at1). The recommendation was annotated with the words "gonna cut people" and "CM-I" (*Id.*). Although every CM-I inmate may not be a dangerous cell-mate, the "house alone" status of a CM-I has a purpose.

5

Respectfully Submitted on 6/18/2025   /s/James Cook
JAMES COOK, ESQ.
Florida Bar No. 966843
Law Office of James V. Cook
314 West Jefferson Street
Post Office Box 10021
Tallahassee, Florida 32301
Telephone: (850) 222-8080
cookjv@gmail.com

JOSHUA TARJAN, ESQ.
Florida Bar No. 107092
The Tarjan Law Firm P.A.
12372 SW 82 Avenue
Pinecrest, FL 33156
(305) 423-8747; (786) 842-4430 fax
josh@tarjanlawfirm.com

Attorneys for Plaintiff

I certify that a true copy hereof, totaling 941 words, is served on counsel of record for Defendant via the Court's CM/ECF system on 6/18/2025.

/s/James Cook